LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

| Present: The Honorable | BEVERLY REID O'CONNELL, United States District Judge | |
|---|---|---|
| Renee A. Fisher | Not Present | N/A |
| Deputy Clerk | Court Reporter | Tape No. |
| Attorneys Present for Plaintiffs: | | Attorneys Present for Defendants: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS)

## ORDER GRANTING PRELIMINARY INJUNCTION

### I. INTRODUCTION

Plaintiff Cherokee Inc. has filed an ex parte application seeking a temporary restraining order and a preliminary injunction. (Dkt. No. 13.) On June 19, 2015, the Court granted Plaintiff's request for a temporary restraining order. (Dkt. No. 23.) After consideration of supplemental briefing and hearing oral argument of counsel on June 25, 2015, the Court now **GRANTS** Plaintiff's request for a preliminary injunction.

### II. BACKGROUND

Plaintiff Cherokee Inc. is a Delaware corporation that owns the trademark SIDEOUT® for various goods, including sports balls and other sporting goods and apparel. (Compl. ¶¶ 1, 9.) Plaintiff's primary business is licensing the trademarks that it owns, such as the SIDEOUT® mark. (*See* Siegel Decl. ¶ 2; Kay Decl. Ex. 1 at 2.) According to the Complaint, the SIDEOUT® mark is the subject of several incontestable federal trademark registrations, including the following:

- U.S. Reg. No. 2,093,175 for SIDEOUT for sporting goods, including knee pads, sport balls and volleyball nets, in International Class 28, issued on September 2, 1997;

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

- U.S. Reg. No. 2,061,649 for SIDEOUT for, inter alia, athletic bags, sport bags, and gym bags, in International Class 18, issued on May 13, 1997;

- U.S. Reg. No. 1,395,798 for SIDEOUT for apparel in International Class 25, issued on June 3, 1986;

- U.S. Reg. No. 1,834,699 for SIDEOUT for, inter alia, recreational and athletic shoes in International Class 25, issued on May 3, 1994; and

- U.S. Reg. No. 2,541,496 for SIDEOUT for towels in International Class 24, issued on February 19, 2002.

(Compl. ¶ 10.)  Plaintiff, along with its licensees and predecessors in interest, has used this mark in connection with volleyballs, apparel and footwear, and athletic bags. (Compl. ¶ 11.)  The SIDEOUT® mark has also been used in different stylizations, including the following depictions:





(Compl. ¶ 12.)  Plaintiff further claims that it owns and has used the following "Rotor Design Mark" in connection with volleyballs, apparel and footwear, and athletic bags:

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |



(Compl. ¶ 14.)  Plaintiff has used the Rotor Design Mark in connection with the SIDEOUT® mark.  (Compl. ¶ 15; *see, e.g.*, Compl. ¶ 14.)

    Plaintiff alleges that Defendants Wilson Sporting Goods Company ("Wilson"), Amer Sports International Oy ("Amer"), and Amer Sports Americas have begun selling products, including volleyballs, bearing the SIDEOUT® mark accompanied by a design that is confusingly similar to the Rotor Design Mark.  (Compl. ¶ 16.)  Plaintiff claims that Defendants' use of these marks is likely to cause confusion, mistake, and deception in the marketplace, posing a threat to the goodwill Plaintiff has built up in its marks and harming its ability to license its marks.  (Compl. ¶ 18.)

    On April 21, 2015, Plaintiff sent Wilson a letter advising Wilson of its rights in the SIDEOUT® mark and demanding that Defendants cease all use of the mark in its products.  (Compl. ¶ 19.)  According to the Complaint, Defendants provided no substantive response to Plaintiff's letter until May 22, 2015, at which point the General Counsel for Amer responded by saying that the issue was "not worth the dispute" and that Defendants had "taken steps to alter" their branding.  (Compl. ¶ 20.)

    On May 28, 2015, Plaintiff filed the Complaint in this matter, alleging four causes of action for: (1) trademark infringement, 15 U.S.C. § 1114; (2) false designation, 15 U.S.C. § 1125; (3) common law trademark infringement; and (4) unfair competition, Cal. Bus. & Prof. Code §§ 17200 *et seq.*  (Dkt. No. 1.)  Then, on June 16, 2015, Plaintiff filed the instant ex parte application seeking a temporary restraining order and preliminary injunction requiring Defendants (1) to stop further distribution and sale of the volleyballs bearing the marks at issue, and (2) to recall the volleyballs bearing the marks that have already been sold and distributed and are in store inventory.  (Dkt. No. 13.)  Defendants opposed this application on June 17, 2015.  (Dkt. No. 19.)  On June 19, 2015, the Court granted Plaintiff's request for a temporary restraining order and set the hearing on the

Case 2:15-cv-04023-BRO-E Document 45 Filed 06/25/15 Page 4 of 10 Page ID #:526

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEREKOEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

order to show cause regarding a preliminary injunction for June 25, 2015. (Dkt. No. 23.) The parties then submitted supplemental briefing on the matter on June 23, 2015, (Dkt. Nos. 30–31), and the Court heard oral argument of counsel on June 25, 2015.

### III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 65, a court may grant preliminary injunctive relief. Yet "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Instead, a court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 17 (quoting *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987)). Indeed, before a court may grant a preliminary injunction, the moving party must establish that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm if no preliminary injunction is granted, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. *Id.* at 20. The Ninth Circuit, however, has indicated that this test may also be applied on a sliding scale: if there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the [moving party]," a court may grant a preliminary injunction, but only if the moving party also demonstrates a likelihood of irreparable injury and the injunction is in the public interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). In other words, where a plaintiff is unable to show a *likelihood* of success on the merits but can at least demonstrate that there are serious questions going to the merits, and the balance of hardships strongly favors the plaintiff, a court may grant preliminary injunctive relief so long as there is still a showing on the last two elements. *See id.* at 1131, 1134–35 ("[A] stronger showing of one element may offset a weaker showing of another. For example, a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits.").

In considering a request for a preliminary injunction, a court must remain mindful that such relief is aimed primarily at preserving the status quo pending trial. *See L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980) (stating that the "fundamental principle" governing preliminary injunctive relief is the need to maintain the status quo prior to determination on the merits).

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

Due to the exigent nature of a preliminary injunction, a party may be unable to produce admissible evidence in support of its position. *Puricle, Inc. v. Church & Dwight Co.*, 568 F. Supp. 2d 1144, 1147 (C.D. Cal. 2008). For purposes of a preliminary injunction, a court may properly consider evidence that would otherwise be inadmissible at trial. *Id.* Indeed, a court has discretion to weigh evidence submitted in support of or against a motion for preliminary injunctive relief. *Id.* Additionally, a court may hear oral testimony at the hearing concerning the preliminary injunction motion. *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1326 (9th Cir. 1994). Whether to hear such testimony is within the court's discretion, however, and it need not consider it if the parties have a full opportunity to submit written testimony and adequately argue the matter. *Id.*

## IV. DISCUSSION

In granting Plaintiff a temporary restraining order, the Court found that Plaintiff had established (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm, (3) that the balance of equities tips in Plaintiff's favor, and (4) that preliminary injunctive relief would be in the public interest. (*See* Dkt. No. 23.) The Court hereby incorporates this analysis by reference. In their supplemental briefing in opposition to Plaintiff's request for a preliminary injunction, Defendants raise three arguments why the Court should not grant a preliminary injunction.

### A. Defendants' Cessation of the Allegedly Infringing Conduct

First, Defendants argue that Plaintiff cannot establish a likelihood of irreparable harm absent an injunction because Wilson has effected a design change to remove the term "SIDEOUT" from its Quicksand volleyballs. (*See* Kuehne Decl. ¶ 2.) In addition, Wilson has stopped manufacturing and selling any volleyballs that bear the term "SIDEOUT."[1] (*See* Kuehne Decl. ¶¶ 3–4.) As the Court explained in its previous order, a party seeking a preliminary injunction must demonstrate that it is *likely* to be irreparably harmed without injunctive relief. (Dkt. No. 23 at 12–13.) And since that order, it appears that Defendants have taken affirmative steps to stop the allegedly

---

[1] During the Court's hearing, counsel for Defendants indicated that Wilson has approximately twenty thousand volleyballs bearing the term "SIDEOUT" remaining in its inventory, which were en route across the Pacific Ocean during the events in question.

Case 2:15-cv-04023-BRO-E Document 45 Filed 06/25/15 Page 6 of 10 Page ID #:528

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

infringing conduct of which Plaintiff complains (and which the Court found would likely cause Plaintiff irreparable harm absent injunctive relief).

Nevertheless, Defendant's cessation of conduct does not necessarily moot the need for injunctive relief as Defendant suggests. Instead, to render the need for an injunction moot, "the reform of the defendant must be irrefutably demonstrated and total"; "[i]f there is a substantial possibility that the act sought to be enjoined may be repeated, the matter is not necessarily mooted." 5 McCarthy on Trademarks and Unfair Competition § 30:11; *accord Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001) ("[D]efendants 'face a heavy burden to establish mootness in such cases because otherwise they would simply be free to return to [their] old ways after the threat of a lawsuit has passed.'" (second modification in original) (internal quotation marks omitted) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 72 (1983))). As the Supreme Court has explained:

> [A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."

*Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (internal citations omitted) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Accordingly, an injunction should still be granted if there is any doubt as to whether a defendant has permanently ceased its conduct. McCarthy, *supra*, § 30.11.

Here, Defendants have submitted a declaration by Wilson's General Manager of its volleyballs division (Inflates)—Michael Kuehne—stating that Wilson has made a design change to remove the term "SIDEOUT" from its volleyballs, and that it is no longer manufacturing or selling volleyballs with the term "SIDEOUT." (Kuehne Decl. ¶¶ 2–4.) While effecting a design change demonstrates some commitment by Wilson not to use this term anymore, there is no indication other than Mr. Kuehne's two-line assertions that

Case 2:15-cv-04023-BRO-E Document 45 Filed 06/25/15 Page 7 of 10 Page ID #:529

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

Wilson will continue to refrain from selling and manufacturing volleyballs bearing the term "SIDEOUT" should the Court deny Plaintiff's request for a preliminary injunction.

For example, Mr. Kuehne's declaration does not state that Wilson *will not* sell volleyballs with the term "SIDEOUT" on them; it merely states that "[o]n May 6, 2015, Wilson *stopped* manufacturing volleyballs bearing the term 'SIDEOUT,'" and that "[o]n June 20, 2015, Wilson *stopped* selling volleyballs in the United States bearing the term 'SIDEOUT' in compliance with the Court's order."[2] (Kuehne Decl. ¶¶ 3–4 (emphasis added).) That is, while Mr. Kuehne states that Defendants have ceased the allegedly infringing conduct, he never states unequivocally that Defendant will not "pick up where [they] left off" should the Court deny Plaintiff an injunction. *Already, LLC*, 133 S. Ct. at 727. Accordingly, the Court finds that Defendants have failed to meet their "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*; accord *Rebel Debutante LLC v. Forsythe Cosmetic Grp., Ltd.*, 799 F. Supp. 2d 558, 567 (M.D.N.C. 2011) ("Bald assertions by a defendant that it will not start up again are not enough to carry this heavy burden.").[3]

### B. Generic Term

Second, Defendants argue that the term "SIDEOUT" is a generic volleyball term that is commonly used in the marketplace. In support of this argument, Defendants submit evidence of the term's use by other volleyball-related companies and as a cheer by volleyball players. (*See* Suppl. Key Decl. ¶¶ 2–5, Exs. 1–4.) Defendants then go on to argue that the term "SIDEOUT"—as a suggestive term—is weak and therefore entitled to

---

[2] Counsel for Defendants reaffirmed these statements during the Court's hearing.

[3] Moreover, courts across jurisdictions have often found the voluntary cessation of infringing conduct insufficient to moot a *preliminary* injunction, which is what Plaintiff seeks here. *See, e.g.*, *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (affirming issuance of preliminary injunction and noting that although the defendant "had voluntarily stopped using the disputed term 'Hi-Res Adventure,'" the plaintiff still "stood to suffer from consumer confusion if Phoenix resumed use of the term"); *Rebel Debutante LLC*, 799 F. Supp. 2d at 567 ("Even when a defendant has ceased production, it has not met its 'heavy burden' unless it shows that it would be unable to resume production in the future."); *Consumers Union of U. S., Inc. v. Theodore Hamm Brewing Co.*, 314 F. Supp. 697, 701 (D. Conn. 1970) ("[T]he defendant's voluntary cessation of the activity is not a ground for a denial of a preliminary injunction." (citing cases)).

Case 2:15-cv-04023-BRO-E Document 45 Filed 06/25/15 Page 8 of 10 Page ID #:530

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

little protection under the Lanham Act.[4] (Suppl. Opp'n at 4–6.) Yet the Court has already concluded that the term is suggestive in this context, a factor that bears on the strength of the mark, but that the *Sleekcraft* factors nevertheless weigh in favor of finding likelihood of confusion. (*See* Dkt. No. 23 at 5–12.) Defendants' "new information" demonstrating the term's connection to volleyball thus does nothing to affect the Court's analysis, as the Court has already agreed with Defendants that the term is suggestive and therefore relatively weak.[5] (Dkt. No. 23 at 6–7.) And while Defendants may eventually establish that the term has become "generic" in the field of volleyball, as Defendants claim in their second counterclaim, (*see* Dkt. No. 29 at 3–5), the Court cannot say at this stage based on the evidence before it that Defendants are likely to succeed in doing so and, consequently, in cancelling Plaintiff's trademark in the context of volleyball. Accordingly, Defendant's second argument fails as well.

### C. Fraud and Abandonment

Finally, Defendants argue that Plaintiff's mark is subject to cancellation for committing fraud on the United States Patent and Trademark Office ("USPTO") and for abandoning its mark. As evidence of fraud,[6] Defendants submit a declaration that

---

[4] It is unclear whether Defendants are arguing (as they did in their initial opposition) that the term is actually "descriptive," rather than suggestive. To the extent that Defendants are making this argument again, the Court rejects it. As the Court explained in its previous order, "[w]hile this association with the sport of volleyball makes it suggestive in the context of volleyballs, the term 'sideout' is in no way descriptive of an actual volleyball because it does not 'directly describe the quality or features of the product.'" (Dkt. No. 23 at 6 (quoting *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1058 n.19 (9th Cir. 1999)).)

[5] During the Court's hearing, counsel for Defendants indicated that even if the mark was suggestive, Plaintiff had failed to establish secondary meaning. However, "'[s]uggestive marks are eligible for protection without any proof of secondary meaning, since the connection between the mark and the source is presumed.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 773 (1992) (modification in original) (quoting *Thompson Med. Co. v. Pfizer Inc.*, 753 F.2d 208, 216 (2d Cir. 1985)).

[6] "'Fraud in procuring a trademark registration or renewal occurs when an applicant knowingly makes false, material representations of fact in connection with his application.' A party seeking cancellation of a trademark registration for fraudulent procurement bears a heavy burden of proof." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (quoting *Torres v. Cantine Torresella S.r.l.*, 808 F.2d 46, 48 (Fed. Cir. 1986)).

Case 2:15-cv-04023-BRO-E Document 45 Filed 06/25/15 Page 9 of 10 Page ID #:531

LINK:

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

Plaintiff filed with the USPTO in 2007 that Defendants argue "failed to acknowledge" a 2002 disclaimer of use by Plaintiff of the SIDEOUT® mark on "knee pads" and "volleyball nets" and instead included these previously disclaimed categories. (Suppl. Opp'n at 7 (citing Key Decl. ¶ 4; Ex. 3 at 16–17 (Dkt. No. 21 at 39–40)); *see also* Key Decl. Ex. 5 (Dkt. No. 21 at 85–89) (stating that "the mark is in use in commerce on or in connection with **all** goods or services listed in the existing registration for this specific class").) Essentially, Defendants argue that it was fraud not to repeat the disclaimer of "knee pads" and "volleyball nets" in Plaintiff's 2007 declaration. Yet Defendants provide no authority establishing that this is fraud, and, as Plaintiff argues, the 2002 disclaimer is part of the USPTO's record establishing Plaintiff's rights in its mark. Moreover, Plaintiff specifically requested in its 2002 disclaimer "that the goods identified as 'knee pads and volleyball nets' be deleted from the registration." (Dkt. No. 21 at 40.) So Plaintiff's 2007 declaration that it was using the mark "in connection with **all** goods or services *listed in the existing registration*" does not demonstrate intent to defraud, (Dkt. No. 21 at 85 (emphasis added)); to the contrary, any failure to exclude those categories from the registration is the fault of the USPTO, rather than an "intent to deceive" the USPTO by Plaintiff. *See In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) ("[A]bsent the requisite intent to mislead the PTO, even a material misrepresentation would not qualify as fraud under the Lanham Act warranting cancellation.").

Defendants also contend that Plaintiff has "abandoned" its mark—or "partially abandoned" it in the context of volleyballs—because "there are substantial gaps in the shown use of the 'sideout' mark on volleyballs by Cherokee or its licensees." (Suppl. Opp'n at 7.) As in their original opposition, Defendants argue that Plaintiff has not shown use of the mark *on volleyballs* between 2007 and 2011 and after 2013. But abandonment is an affirmative defense and therefore Defendants' burden to "strictly prove[]," *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1247 (9th Cir. 2013); *accord* 15 U.S.C. § 1115(b)(2) (listing abandonment as a defense to incontestability); Plaintiff is not required to negate it in order to demonstrate a likelihood of success on its own claim.[7] Accordingly, because Defendants have not submitted any

---

[7] *See, e.g.*, *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1158 (9th Cir. 2007) ("Because 'the burdens at the preliminary injunction stage track the burdens at trial,' once the moving party has carried its burden of showing a likelihood of success on the merits, the burden shifts to the non-moving party to show a likelihood that its affirmative defense will succeed." (quoting *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006))).

LINK:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 15-04023 BRO (Ex) | Date | June 25, 2015 |
|---|---|---|---|
| Title | CHEROKEE INC. V. WILSON SPORTING GOODS COMPANY ET AL. | | |

additional evidence of abandonment, the Court again concludes that Defendants' evidence is insufficient, without more, to demonstrate Plaintiff's "intent not to resume trademark use," as is required under 15 U.S.C. § 1127 to prove abandonment. *Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc.*, 458 F.3d 931, 937 (9th Cir. 2006).

## V.     CONCLUSION

For the foregoing reasons, Plaintiff's application for a preliminary injunction is **GRANTED**. Defendants are hereby preliminarily enjoined during the pendency of this action from selling, manufacturing, or distributing any further volleyballs featuring the term "SIDEOUT."

**IT IS SO ORDERED.**

:

Initials of Preparer       rf